UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. 14-0039(TFH) |
| | : | |
| **Venkata Srinivas Mannava,** | : | |
| Defendant. | : | |

**GOVERNMENT'S**
**MEMORANDUM IN SUPPORT OF SENTENCING AND DEPARTURE MOTION**

The United States of America, through its counsel, the United States Attorney for the District of Columbia, submits the following memorandum in support of its sentencing recommendation and motion for a sentencing departure.

1. The defendant is scheduled to be sentenced on June 12, 2015, for conspiracy to obtain controlled substances, that is oxycodone, by fraud in violation of 21 U.S.C. §§ 843(a)(3) and 846, and for conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1347 and 1349. The defendant has provided substantial assistance to the Government in the investigation and prosecution of others involved in criminal conduct.  In selecting an appropriate sentence, we ask the court to consider his decision to cooperate with law enforcement along with the substantial assistance he has provided through testimony.  §5K1.1, U.S.S.G. Manual.

**Recommended Sentence**

2. For reasons stated in this memorandum, the Government recommends that the court impose a sentence of home confinement of about six months, followed by a period of supervised release of one year,  on count one, in accordance with 18 U.S.C. §3583(b)(3) and three years supervised release on count two, in accordance with 18 U.S.C. § 3583(2).   The court should impose a special assessment of $200 as required by 18 U.S.C. §3013(a)(2)(A).  The Government

requests that this court issue an order of forfeiture of $4,729,789 pursuant to 18 U.S.C. §3663A as stated in paragraph 152 of the Presentence report to the Department of Health and Mental Hygiene, ATTN: Charles Millian, J.D., M.P.H., 201 West Preston Street, Baltimore, Maryland 21201, and to the Department of Health Care Finance, Attn: Wayne Turnage, M.P.A., Director, 441 4th Street, N.W., Suite 900S, Washington, D.C. 20001.  (We recognize that the defendant has no ability to pay that amount.)  Further, the Government recommends that the sentence include mental health counseling, and that such counseling continue as a special condition of supervised release.

**Summary of Reasons in Support of Recommendation**

      3.  The defendant is a licensed pharmacist in D.C. and Maryland, and arrived here from India sponsored by co-conspirator Annaperredy on a H1-B visa.  This particular kind of visa allows an immigrant to work and earn a salary in the U.S.A. as a pharmacist as long as he has an employment sponsor.  Most visas do not allow immigrants to work and earn a salary in the U.S.A. until they receive permanent resident alien status.  Mr. Mannava worked as the chief pharmacist at Pharmacare Discount Pharmacy at 651 Florida Ave., N.W., Washington, D.C. which is owned by Annaperredy.

      4.  While employed by Annaperredy as a pharmacist, he engaged in two criminal actions. The first action charged in count one involved conduct in which he filled 631 false and forged prescriptions for Euwanet Asfaw, all for oxycodone, a schedule II controlled substance narcotic, and all for cash totaling $211,829.74.  This was done under circumstances in which the defendant knew or should have known that all these prescriptions were false, forged and invalid. The crime charged in count one did not involve Mr. Annaparredy's participation, as far as we know, although at all times, Annaparredy was the owner of the DC pharmacy, and three others

located in Maryland.  Although Mannava pled guilty to the offense in count one, his cooperation did not implicate any others, as there were no others to charge by the time of his guilty plea and Mr. Mannava was the illegal source of supply of oxycodone (marketed as oxycontin) pills for Asfaw and his criminal organization.  Examination of the pharmacy records show that Asfaw paid the retail prices for all these prescriptions and that all the cash Asfaw paid was received by the pharmacy. Mr. Mannava's stated incentives in conducting these illegal transactions was to increase the volume of business in the Pharmacy, please Annaperredy, and hope to repeat further benefits in the future as getting a small percentage ownership of the business as promised by Annaperredy.

    5.  The offense charged in the second count, conspiracy to engage in health care fraud, did involve cooperation and trial testimony against the equity partner in Pharmacare Discount Pharmacy,  Annaparreddy.  Mannava provided valuable information to law enforcement in a series of pre-indictment meetings.  This information aided the law enforcement task force in understanding how the fraudulent medicare and medicade billings occurred and what transactions were fraudulent.   The volume of illegal transactions were huge, but imbedded in otherwise lawful prescription billing practices.   Mannava knew that millions of dollars of health care billings were fraudulent because he was one among others who actually did the fraudulent billing at Annaperredy's direction.  He testified in the trial of U.S. v. Annappareddy, GLR – 13-0374, in U.S. District Court in Baltimore.  Attached is a letter from Assistant U.S. Attorney Sandy Wilkinson, which details the offense conduct in the trial.

    6.  At trial, Mr. Mannava testified in rebuttal and refuted the testimony of Annaparredy.  As Annaparredy's non-equity partner, he was able to rebut Annaparredy's testimony in serious respects, and elaborated about the fraudulent nature of the infamous "L" list, which was

Annaparredy's coded way of keeping track of fraudulent billing.  See Attachment letter from AUSA Sandy Wilkinson, paragraphs 20, and paragraph 15.).  According to AUSA Wilkinson, the jury in reaching a guilty verdict had to reject Annaperredy's testimony as false.  As a consequence, Mannava's testimony proved to be valuable and the verdict reflects that they apparently believed him, not Annaperredy.

      7.  It should be noted that Annaparredy knew he was under investigation and before the indictment had suggested that Mr. Mannava leave the country.   This suggestion was done in an obvious effort to keep Mannava from being in a position to testify as a Government witness.  AS a consequence of that and repeated communications from Annaperredy and his agents, Mannava and his wife moved in an effort to avoid contact.

      8.  Although Annaperredy promised Mannava equity ownership (something less than 10%) in Pharmacare Discount Pharmacy, he never received any money or assets—just a promise.  Further, Annaperredy paid Mannava a salary far lower than the going rate for pharmacists—and did so because Mannava's ability to stay in the USA depended upon Annaperredy's continued sponsorship for employment.  Further, for all the millions of dollars in in fraudulent billing generated in the health care fraud scheme, Mannava never received a single dollar in criminal proceeds.  All went to Annaperredy.  Again, Mannava received only promises for continued employment and an eventual small percentage ownership in the business.

**Procedural History**

      9.  On March 6, 2014,  the defendant pled guilty to a single count criminal information charging him with conspiracy to obtained controlled substance oxycodone by prescription fraud and conspiracy to engage in health care fraud.  The defendant remained on personal recognizance and in compliance with his release conditions since that date.

**Nature and Extent of Substantial Assistance to Law Enforcement**

10. The defendant acknowledged in open court, under oath, and in a written statement of facts in support of the guilty plea which he adopted under oath. As summarized above in the reasons for the sentencing recommendation, the defendant provided substantial assistance to law enforcement by explaining how the health care fraud scheme was perpetrated, who made the fraudulent billings, and he explained the significance of Annaperredy's emails, including the infamous "L" list, which was Annaperredy's code for fraudulent billings. As noted above, he actually was called upon to testify at Annaperredy's trial and provided testimony which contradicted Annaperredy's testimony. Although other's involved in Annaperredy's fraud scheme cooperated and testified, the defendant assistance in how the scheme was perpetrated was valuable, and of course, his testimony in contradiction of Annaperredy's assertions of innocence was a significant factor leading to conviction.

**Concluding Comments**

11. Although both offenses are serious, and the sentencing guideline range without a departure recommends a sentence of 37-46 months, there are significant mitigating factors. The defendant's early acceptance of responsibility and cooperation with law enforcement enure to his benefit and the Government certainly benefitted by his cooperation, which resulted in the leader of the health care fraud scheme being held accountable for his criminal conduct. Moreover, the defendant is practically destitute. His equitable ownership of Pharmacare Discount Pharmacy is ethereal and realized him no monetary gain. Again, although he helped perpetrate a fraud scheme that enriched Annaperredy by millions of dollars, he actually received none of the proceeds of the crime. He did however, maintain employment by Annaperredy but at a salary below the normal salary paid to pharmacists in this area. Disciplinary proceedings have been

commenced by Boards of Pharmacy in D.C. and in Maryland, and despite a letter from the Government that he cooperated with law enforcement, the proceedings are likely to result in revocation of licenses in both states. Meanwhile, the offenses of conviction are mandatory deportable offenses, the first offense is deportable by literal interpretation of the statute, as it is a drug trafficking offense. The defendant will be able to delay deportation by a few months by voluntarily submitting to the process, if he is not incarcerated. Consequently, his time remaining in the U.S.A. can be measured in months. If incarcerated, the deportation hearing will likely be conducted while incarcerated and he will be deported at the conclusion of his imprisonment. Finally, the defendant has been struggling with issues involving his self-worth as a consequence of these criminal convictions, and the PSR discussed suicidal ideations and at least one significant attempt. As a consequence, if the court agrees with the Government's recommendation, we urge that mental health counseling become a component of the sentence and a special condition of supervised release. These mitigating factors outweigh the aggravating factors, and as a consequence, for this defendant, the Government makes a recommendation for leniency.

Respectfully submitted,

VINCENT H. COHEN, JR.
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 471489

 /s/
JOHN P. DOMINGUEZ
Assistant United States Attorney
D.C. Bar No. 959809
Organized Crime and Narcotics Section
555 4th Street, N.W. #4205
Washington, DC 20001
(202) 252-7684; Fax: 514-8707

E-mail: John.Dominguez@usdoj.gov

Case 1:14-cr-00039-TFH   Document 21   Filed 06/10/15   Page 8 of 8